IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

KAMISHA STANTON, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

CASH ADVANCE CENTERS, INC.,

    Defendant.
_____/

CASE NO: 4:21-cv-00285-SRB

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**SUGGESTION IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS OR STAY LITIGATION AND COMPEL ARBITRATION, AND
SUGGESTION CONSENTING TO DEFENDANT'S MOTION TO STAY DISCOVERY**

**TABLE OF CONTENTS**

I. INTRODUCTION……………………………………………………………….....…1
II. LEGAL STANDARD……………………………………………………………….3
III. ARGUMENT AND MEMORANDUM OF LAW……………….....…………………4
    A. No Agreement to Arbitrate Exists Between Plaintiff and Defendant………………4
    B. Plaintiff's Claims are Beyond the Scope of the Purported Arbitration Provision…..7
    C. Plaintiff Does not Oppose a Brief Stay of the Proceedings……………………….12
IV. CONCLUSION…………………………………………………………………..13

# TABLE OF AUTHORITIES

**Cases**

*Amergence Supply Chain Mgmt. v. Changhong (Hong Kong) Trading Ltd.,*
    2016 U.S. Dist. LEXIS 197369 (C.D. Cal. Apr. 21, 2016)…………………………...…………6

*Baier v. Darden Restaurants*,
    420 S.W.3d 733 (Mo. App. W.D. 2014)……………………………………………………......3

*Bank of America, N.A. v. UMB Financial Services, Inc.*,
    618 F.3d 906 (8th Cir 2010)………………………………………………………………..……5

*Barksdale v. Backyard Prods., LLC*,
    2019 U.S. Dist. LEXIS 171659 (W.D. Mo. Oct. 3, 2019)…………………………………….…4

*Bellemere v. Cable-Dahmer Chevrolet, Inc.*,
    423 S.W.3d 267 (Mo. App. W.D. 2013)……………………………………...……………….7

*Breda v. Cellco P'ship,*
    934 F.3d 1 (1st Cir. 2019)……………………………………………………...………….10

*Briggs v. PFVT Motors, LLC,*
    2020 U.S. Dist. LEXIS 163949 (D. Ariz. Sep. 8, 2020)……………………………...…….9

*Clemmons v. Kansas City Chiefs Football Club, Inc.*,
    397 S.W.3d 503 (Mo. Ct. App. 2013)………………………………………………...………4

*Doe v. Princess Cruise Lines, Ltd.*,
    657 F.3d 1204 (11th Cir. 2011)……………………………………………………….………..10

*Donaldson Co., Inc. v. Burroughs Diesel, Inc.*,
    581 F.3d 726 (8th Cir. 2009)……………………………………………………...………...5

*Dunn Indus. Grp., Inc. v. City of Sugar Creek*,
    112 S.W.3d 421 (Mo. banc 2003)……………………………………………………………7, 8

*Dupree v. Wyndham Vacation Resorts, Inc.*,
    2022 U.S. Dist. LEXIS 10355 (W.D. Mo. Jan. 20, 2022)………………………………………3

*Esparza v. SmartPay Leasing, Inc.*,
    2017 U.S. Dist. LEXIS 164014 (N.D. Cal. Oct. 3, 2017)…………………………………….11

*Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*,
    516 F.3d 695 (8th Cir.2008)…………………………………………………………………4

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)…………………………………………………………………….4

*Foster v. Aaron's Inc.*,
    2016 U.S. Dist. LEXIS 193065 (D. Ariz. Apr. 21, 2016)………………………..………9

*Frye v. Speedway Chevrolet Cadillac*,
    321 S.W.3d 429 (Mo. Ct. App. 2010)………………………….………………..4

*Gamble v. New Eng. Auto Fin.*,
    735 F. App'x 664 (11th Cir. 2018)…………………………...…………………9

*Granite Rock Co. v. Int'l Bd. of Teamsters*,
    561 U.S. 287 (2010)……………………………………….……………………4

*Holcombe v. DIRECTV, LLC*,
    159 F. Supp. 3d 1337 (N.D. Ga. 2016)…………………………………………10

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002)……………………………………….………………………4

*In re Ford Motor Co. Dps6 Powershift Transmission Prods. Liab. Litig.*,
    2020 U.S. Dist. LEXIS 119791 (C.D. Cal. July 2, 2020)…………………….…………6

*In re Jiffy Lube Int'l, Inc.*,
    847 F. Supp. 2d 1253 (S.D. Cal. 2012)…………………….……………..10

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prods. Liab. Litig.*,
    2011 U.S. Dist. LEXIS 162846 (C.D. Cal. Dec. 20, 2011)…………………….………..6

*Int'l Union v. Trane U.S. Inc.*,
    946 F.3d 1031 (8th Cir. 2020)……………………………….……………..4

*Ioane v. MRS BPO, LLC*,
    2020 U.S. Dist. LEXIS 161990 (D. Haw. Sep. 4, 2020)……………………………...…….5

*Jackson v. Higher Educ. Loan Auth. of Missouri*,
    497 S.W.3d 283 (Mo. App. E.D. 2016)…………………………..………………..3

*Jimenez v. Cintas Corp.*,
    475 S.W.3d 679 (Mo. App. E.D. 2015)…………………………………………….3

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013)……………………………………………………6

*McFadden v. Van Chevrolet-Cadillac, LLC*,
    2018 U.S. Dist. LEXIS 130554 (W.D. Mo. Aug. 3, 2018)………………………………….3

*Morgan v. Ferrellgas, Inc.*,
    2021 U.S. App. LEXIS 23777 (8th Cir. Aug. 11, 2021)……………………………………8

*Nitro Distributing, Inc. v. Dunn*,
    194 S.W.3d 339 (Mo. 2006)……………………………………………………………….5

*Porter v. Dollar Fin. Group, Inc.*,
    2014 WL 4368892 (E.D. Cal. 2014)…………………………………………..……………9

*Revitch v. DirecTV, LLC*,
    2018 U.S. Dist. LEXIS 143812 (N.D. Cal. Aug. 23, 2018)…………………....…………..11

*Savage v. Citibank N.A.*,
    2015 U.S. Dist. LEXIS 62343 (N.D. Cal. May 12, 2015)………………………….....…..11

*Scottrade, Inc. v. Variant, Inc.*,
    2014 U.S. Dist. LEXIS 12095 (E.D. Mo. Jan. 31, 2014)………………………..………….5

*Smith v. Steinkamp*,
    318 F.3d 775 (7th Cir. 2003)……………………………………….………………10, 11

*Telecom Italia, SpA v. Wholesale Telecom Corp.*,
    248 F.3d 1109 (11th Cir. 2001)……………………………………………………………9

*Trenz v. On-Line Adm'rs*,
    2016 U.S. Dist. LEXIS 199598 (C.D. Cal. Dec. 16, 2016)……………………………...……9

*Torres v. Simpatico, Inc.*,
    781 F.3d 963 (8th Cir. 2015)……………………………………………………………..4, 5

*Tucker v. Vincent*,
    471 S.W.3d 787 (Mo. App. E.D. 2015)…………………………………….………………7

*Verni v. Cleveland Chiropractic Coll.*,
    212 S.W.3d 150 (Mo. banc 2007)…………………………………….……………………5, 7

*Vincent v. BMW of N. Am.*,
    2019 U.S. Dist. LEXIS 227679 (C.D. Cal. Nov. 26, 2019)………………….…………..6

*Wagner v. Discover Bank*,
    2014 WL 128372 (D. Colo. 2014)……………………………………………...………10

Plaintiff Kamisha Stanton opposes Defendant Cash Advance Centers, Inc.'s Motion to Dismiss, or Stay Litigation and Compel Arbitration, or, in the Alternative, to Dismiss the Class Action Claims (the "Motion" or "Mot."), [DE 36]. Plaintiff, however, does not oppose Defendant's Motion to Stay Discovery, [DE 38], pending resolution of Defendant's Motion because Defendant refuses to participate in further discovery such that Plaintiff will be unable to comply with the current Scheduling Order. Plaintiff therefore intends to propose a modified schedule in the event this Court denies the Motion.

I.    INTRODUCTION

Defendant Cash Advance Centers, Inc., has actively litigated this case for almost eight months. Defendant served and responded to written discovery in its name.[1] Now, Defendant seeks to force Plaintiff's claims into arbitration and dismiss the class members' claims because it contends that Plaintiff "entered into Customer Agreements with Defendant" that contain an arbitration provision. Mot. at 1. This is false.

The agreements attached to Defendant's Motion identify "Advance America, Cash Advance Centers of Missouri, Inc." as the entity with whom Plaintiff allegedly[2] contracted. Advance America, Cash Advance Centers of Missouri, Inc., and Defendant Cash Advance Centers, Inc., are separate and distinct corporate entities.[3] The agreements on which Defendant relies for its

---

[1] *See* **Composite Exhibit A**, written discovery requests served by Defendant, and Defendant's responses to Plaintiff's requests.

[2] Plaintiff has no recollection of entering into the agreements attached to the Motion, but whether Plaintiff did or did not enter into the agreements makes no difference because Defendant is not a party to the contracts and the arbitration provision does not encompass the claims in this case.

[3] *See* **Composite Exhibit B**, division of corporation website screenshots for the two entities. This Court is permitted to take judicial notice of division of corporation websites. *See Bigfoot on the Strip, LLC v. Winchester*, No. 18-3155-CV-S-BP, 2018 U.S. Dist. LEXIS 129674 (W.D. Mo. Aug.

Motion make no reference to Defendant, directly or indirectly. And so, instead of attempting to explain why it, as a nonsignatory, has any basis to seek to enforce the purported arbitration provisions, Defendant simply contends that it is a party to the agreements hoping that its misrepresentations will go unnoticed. As discussed in detail below, under controlling Missouri law, Defendant cannot show that it is third-party beneficiary to the agreements. Therefore, Defendant's Motion should be denied for this reason alone.

But even if Defendant could somehow show that it is a third-party beneficiary, its Motion should nevertheless be denied because the arbitration clause Defendant seeks to enforce does not encompass Plaintiff's claims under the Telephone Consumer Protection Act (the "TCPA"). Defendant disingenuously states that the calls that are the subject of this lawsuit were about Plaintiff's loans from eleven years ago. Mot. at 8 ("By entering into these Agreements, Plaintiff consented to receiving the calls that are the subject of her Complaint."). This is also false.

As Defendant acknowledges in the declaration filed in support of its Motion, Plaintiff apparently satisfied two of the loans, partially satisfied the third, and then Defendant sold the unsatisfied loan to third-party debt purchaser. Pombo Decl., [DE 35-1], at ¶9. In its Answer to the Complaint, Defendant admitted that it was not trying to reach Plaintiff with its prerecorded voice calls; it was trying to reach some other individual (Sergio Rodriguez) who is not known to Plaintiff. Ans., [DE 14], at ¶¶10-12. The calls at issue in this case have nothing to do with purported agreements from eleven years ago for loans that Defendant no longer holds. Accordingly, since Plaintiff's TCPA claim does not implicate the agreements Defendant seeks to enforce, it is not

---

2, 2018) ("The Court has independently examined the Kansas and Missouri websites and takes judicial notice of the fact that, per the Kansas and Missouri Secretary of State's websites, Dancing Cow Farms is not a legal entity in either state.")

encompassed by any arbitration agreement, setting aside the fact that Defendant is not even a party to the agreements.

In sum, this Court should deny Defendant's Motion and allow the case to proceed. Plaintiff and her counsel have expended considerable resources litigating the case to date in an effort to comply with the Court's Scheduling Order, and Defendant's meritless and untimely Motion has already caused undue delay and wasted judicial resources.

## II. LEGAL STANDARD

"When presented with a motion to compel arbitration, we ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Dupree v. Wyndham Vacation Resorts, Inc.*, No. 21-CV-03290-SRB, 2022 U.S. Dist. LEXIS 10355, at *4 (W.D. Mo. Jan. 20, 2022) (quoting *McFadden v. Van Chevrolet-Cadillac, LLC*, No. 18-00395-CV-W-BP, 2018 U.S. Dist. LEXIS 130554, 2018 WL 3715756, at *1 (W.D. Mo. Aug. 3, 2018) (citation omitted)). "As a federal district court sitting in Missouri, this Court must analyze an arbitration agreement based on Missouri state-law principles." *Dupree*, 2022 U.S. Dist. LEXIS 10355, at *4 (citing *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 784 (8th Cir. 2016)).

"The elements required to form a valid contract in Missouri are offer, acceptance, and bargained for consideration." *Dupree*, 2022 U.S. Dist. LEXIS 10355, at *4 (quoting *Baier v. Darden Restaurants*, 420 S.W.3d 733, 737 (Mo. App. W.D. 2014) (citation and internal quotation marks omitted)). "The party seeking to compel arbitration bears the burden of proving the existence of a valid and enforceable arbitration agreement." *Dupree*, 2022 U.S. Dist. LEXIS 10355, at *5 (quoting *Jackson v. Higher Educ. Loan Auth. of Missouri*, 497 S.W.3d 283, 287 (Mo. App. E.D. 2016) (citing *Jimenez v. Cintas Corp.*, 475 S.W.3d 679, 683 (Mo. App. E.D. 2015))).

In *Int'l Union v. Trane U.S. Inc.*, the Eighth Circuit held:

> The presumption of arbitrability does not "override[ ] the principle that a court may submit to arbitration only those disputes that the parties have agreed to submit." The presumption applies "only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties [to a CBA] intended."

946 F.3d 1031, 1033 (8th Cir. 2020) (quoting *Granite Rock Co. v. Int'l Bd. of Teamsters*, 561 U.S. 287, 302-03 (2010)).

### III. ARGUMENT AND MEMORANDUM OF LAW

**A. <u>No Agreement to Arbitrate Exists Between Plaintiff and Defendant</u>**.

The threshold question of whether an arbitration agreement exists at all is "simply a matter of contract." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). This question turns on the application of state contract law. *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015). "The elements required to form a valid contract in Missouri are offer, acceptance, and bargained for consideration." *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 436 (Mo. Ct. App. 2010) (citations and quotations omitted). "The party moving to compel arbitration bears the burden of proving these elements." *Barksdale v. Backyard Prods., LLC*, No. 4:19-cv-06074-DGK, 2019 U.S. Dist. LEXIS 171659, at *3-4 (W.D. Mo. Oct. 3, 2019) (citing *Clemmons v. Kansas City Chiefs Football Club, Inc.*, 397 S.W.3d 503, 506 (Mo. Ct. App. 2013)).

Whether a nonsignatory to an arbitration provision is permitted to compel arbitration is a threshold question of arbitrability. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002) (delineating potentially dispositive threshold issues between "questions of arbitrability" and "procedural questions"). Threshold questions of arbitrability are for this Court to decide applying Missouri contract law. *See id*. at 83; *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 701 (8th Cir.2008); *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d

726, 732 (8th Cir. 2009) ("The Supreme Court has ruled that state contract law governs the ability of nonsignatories to enforce arbitration provisions.").

Under Missouri law, "'[o]nly parties to a contract and any third-party beneficiaries of a contract have standing to enforce that contract. To be bound as a third-party beneficiary, the terms of the contract must clearly express intent to benefit that party.'" *Torres*, 781 F.3d at 971 (citing *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. banc 2007)). "In cases where the contract lacks an express declaration of that intent, there is a strong presumption that the third party is not a beneficiary and that the parties contracted to benefit only themselves. Furthermore, a mere incidental benefit to the third party is insufficient to bind that party." *Verni*, 212 S.W.3d at 153. Where, as here, the agreement expresses no intent to benefit the nonsignatory seeking to enforce arbitration and the benefit obtained from the agreement, if any, is merely incidental, the nonsignatory is not a third-party beneficiary and cannot enforce the arbitration provision. *See, e.g., Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. 2006) ("Here, the Amway distributorship agreement expresses no intent whatsoever to benefit Nitro and West Palm, and any benefit obtained from the agreement, if at all, was incidental. Accordingly, Nitro and West Palm are not third-party beneficiaries."); *Scottrade, Inc. v. Variant, Inc.*, No. 4:13CV1710 HEA, 2014 U.S. Dist. LEXIS 12095 (E.D. Mo. Jan. 31, 2014) ("The Court is not required to compel Plaintiff to arbitrate its claims against these Defendants. Plaintiff did not agree in writing or otherwise to arbitrate claims with them and cannot be compelled to do so.") (citing *Bank of America, N.A. v. UMB Financial Services, Inc.*, 618 F.3d 906, 912- (8th Cir 2010)).

Most courts outside of the Eighth Circuit have reached the same conclusion, including in cases involving TCPA claims. *See, e.g., Ioane v. MRS BPO, LLC*, No. 20-00040 JAO-WRP, 2020 U.S. Dist. LEXIS 161990, at *10 (D. Haw. Sep. 4, 2020) (denying nonsignatory's motion to

compel arbitration in TCPA case and citing cases); *Vincent v. BMW of N. Am.,* No. CV 19-6439 AS, 2019 U.S. Dist. LEXIS 227679, at *9 (C.D. Cal. Nov. 26, 2019) ("It is clear from the language of this Arbitration Provision that Plaintiff agreed only to arbitrate claims and disputes (including the arbitrability question) 'between **you** and **us**' - that is, Plaintiff and the dealership (and the dealership's 'employees, agents, successors or assigns').") (emphasis in original); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) ("For example, Scholten's arbitration clause states that '[e]ither you or we may choose to have any dispute between you and us decided by arbitration.' The language of the contracts thus evidences Plaintiffs' intent to arbitrate arbitrability with the Dealerships and no one else. The Dealerships are not a party to this action."); *In re Ford Motor Co. Dps6 Powershift Transmission Prods. Liab. Litig.,* No. 18-ML-02814 AB (FFMx), 2020 U.S. Dist. LEXIS 119791, at *17-18 (C.D. Cal. July 2, 2020) ("Framed either as a question of whether Ford has standing to invoke the Arbitration Provision, or as a question of whether Plaintiffs agreed to arbitrate their dispute with Ford, the answer is the same: no."); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prods. Liab. Litig.,* No. 8:10-ML-02172-CJC(RNBx), 2011 U.S. Dist. LEXIS 162846, at *32 (C.D. Cal. Dec. 20, 2011) (where arbitration clause limited to "between you and us or our employees, agents, successor or assigns," like here, stating, "None of the arbitration provisions state that nonsignatory third parties, such as Toyota, may elect to arbitrate claims under the Purchase Agreements."); *Amergence Supply Chain Mgmt. v. Changhong (Hong Kong) Trading Ltd.,* No. CV-15-9976-MWF (AFMx), 2016 U.S. Dist. LEXIS 197369, at *13 (C.D. Cal. Apr. 21, 2016) ("Defendant also argued that, in the absence of any explicitly limiting language, the arbitration provision language that '[a]ny dispute arising from or in connection with this agreement shall be submitted to . . . arbitration,' suggests that the requirement to arbitrate is not confined to the signatories only. The Court disagrees.").

Here, pursuant to the contracts attached to its Motion, Defendant is not a party to any of the agreements under which it seeks to enforce arbitration. The purported contracts were entered into "between Kamisha Gatlin ('you', 'your') and Advance America, Cash Advance Centers of Missouri, Inc. ('Advance America', 'we', 'us')." *See* Customer Agreement, [DE 35-1] at 6, 9, 12. And the arbitration provision Defendant seeks to enforce provides: "If *you* have any dispute with *us* or if we have any dispute with you, then both *you* and *we* must seek resolution of the dispute in either small claims court or in arbitration." *Id*. at 7, 10, 13 (emphasis supplied). Defendant Cash Advance Centers, Inc., is not identified in any of the agreements, and there is nothing found in the terms of the contract that clearly express an intent to benefit Defendant. Accordingly, "there is a strong presumption that [Defendant] is not a beneficiary." *See Verni*, 212 S.W.3d at 153.

Defendant's Motion should be denied for this reason alone. But even if this Court is inclined to give any weight to Defendant's position that it can somehow enforce arbitration provisions in contracts to which it is not a party, this Court should still deny the Motion because Plaintiff's TCPA claims have nothing to do with agreements dating back to 2011 for loans that Defendant no longer even holds.

**B. Plaintiff's Claims are Beyond the Scope of the Purported Arbitration Provision.**

"Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 435 (Mo. banc 2003). The presumption in favor of arbitration alone is not enough "to extend an arbitration agreement beyond its intended scope." *Tucker v. Vincent*, 471 S.W.3d 787, 794 (Mo. App. E.D. 2015) (quoting *Bellemere v. Cable-Dahmer Chevrolet, Inc.*, 423 S.W.3d 267, 276 (Mo. App. W.D. 2013)). Moreover, under Missouri law, "[a] broad arbitration provision covers all disputes *arising out of a contract to arbitrate*; a narrow provision limits arbitration to specific

types of disputes." *Morgan v. Ferrellgas, Inc.*, No. 20-1171, 2021 U.S. App. LEXIS 23777 (8th Cir. Aug. 11, 2021) (quoting *Dunn Indus.*, 112 S.W.3d at 428) (emphasis supplied).

Here, Plaintiff's TCPA claim encompasses conduct by Defendant that involves an entirely separate violation of a federal law that has nothing to do with the agreements Defendant has submitted in support of its Motion. As discussed above, and notwithstanding Defendant's misrepresentations, the calls at issue in this case were not related to the agreements or to any existing or past-due loan. Indeed, Defendant itself claims that Plaintiff satisfied two of the loans, partially satisfied the third, and that it sold the unsatisfied loan to third-party debt purchaser. Pombo Decl., [DE 35-1], at ¶9. And in its Answer to the Complaint, Defendant admitted that it was not trying to reach Plaintiff with its prerecorded voice calls; it was trying to reach some other individual (Sergio Rodriguez). Ans., [DE 14], at ¶¶10-12.

In *Briggs v. PFVT Motors, LLC,* the court refused to compel arbitration on similar facts, holding:

> Rather, the Eleventh Circuit in *Gamble v. New Eng. Auto Fin.*, 735 F. App'x 664 (11th Cir. 2018) is instructive. There, months after paying off an auto loan from the defendant, the plaintiff received repeated messages from the defendant seeking new business. *Id*. at 664. The court refused to find that the parties' arbitration clause from the first loan applied to this new solicitation of business. *Id*. at 666. Although the clause applied to "any dispute arising from or relating to" the agreement, language making an agreement broad "does not make it limitless." *Gamble*, 735 F. App'x at 666; *see In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012) (refusing to find a suit arbitrable where the arbitration agreement entered at the time of a service covered "any and all disputes" because the plaintiff was subsequently bombarded with texts promoting future, unrelated services from the defendant).
>
> Here too, Defendant's conduct is a new solicitation of business unrelated to the parties' prior agreement. The Agreement covered the sale of a vehicle that Plaintiff traded to another dealer years prior to Defendant's new solicitations of Plaintiff's business. (Doc. 24 at

> 3.) The arbitration clause's application to any suit that may "arise out of or relate to" the Agreement or relationship is clearly broad, but that fact alone cannot compel the Plaintiff to arbitrate all future suits no matter how unrelated to the original agreement and relationship. (Doc. 23-1 at 3); *see Breda v. Cellco P'ship*, 934 F.3d 1, 8 (1st Cir. 2019) (refusing to find a dispute arbitrable because "all of the material facts underlying [plaintiff's] claims . . . occurred after the agreement's termination."). Rather, Defendant's interpretation extends the scope of arbitrable claims past the point that any reasonable consumer would expect. This dispute thus lies outside the scope of the parties' arbitration agreement.

No. CV-20-00478-PHX-GMS, 2020 U.S. Dist. LEXIS 163949, at *6-8 (D. Ariz. Sep. 8, 2020); *see also Gamble,* 735 F. App'x at 666 (11th Cir. 2018) ("Ms. Gamble's TCPA claim, on the other hand, arises not from the Loan Agreement or any breach of it, but from post-agreement conduct that allegedly violates a separate, distinct federal law. And NEAF's sending of the text messages do not relate to or arise from its lending money to Ms. Gamble, Ms. Gamble's repayment of that loan, or the vehicle which secured the loan."); *Trenz v. On-Line Adm'rs*, No. CV 15-08356-AB (KSx), 2016 U.S. Dist. LEXIS 199598, at *12 (C.D. Cal. Dec. 16, 2016) ("The TCPA claims here 'relate to' the Defendants' efforts to solicit his business, not to the lease transaction or any transaction or relationship related to the lease transaction."); *Foster v. Aaron's Inc.*, No. CV-15-01637-PHX-SRB, 2016 U.S. Dist. LEXIS 193065, at *4-5 (D. Ariz. Apr. 21, 2016) ("The calls at issue here did not refer to Plaintiff's lease agreement, but were part of Defendant's efforts to collect an unpaid balance from another customer."); *Porter v. Dollar Fin. Group, Inc.*, 2:14-1638 WBS AC, 2014 WL 4368892, at *3 (E.D. Cal. 2014) (denying defendant's motion to compel arbitration where plaintiff alleged she received calls in violation of the TCPA that were not related to the contract containing the arbitration provision, because the arbitration agreement did not "encompass[ ] the dispute at issue"); *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001) ("[d]isputes that are not related—with at least some directness—to

performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause"); *Breda v. Cellco P'ship,* 934 F.3d 1, 7-8 (1st Cir. 2019) ("readily conclud[ing]" that plaintiff's "TCPA claims do not have their real source in [the parties'] expired Agreement…, that of customer and telephone service provider"); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) ("The term 'arising out of' in standard arbitration provisions is broad, but it is not all encompassing. It requires the existence of some direct relationship between the dispute and the performance of duties specified by the contract.") (internal alterations omitted); *Holcombe v. DIRECTV, LLC*, 159 F. Supp. 3d 1337 (N.D. Ga. 2016) (holding that the plaintiff's TCPA claim does not fall within the scope of the parties' arbitration agreement because DirecTV's calls were for "advertising, marketing, or other purposes" soliciting plaintiff to enter into a new account); *Wagner v. Discover Bank*, 12 CV-02786-MSK-BNB, 2014 WL 128372, at *5 (D. Colo. 2014) (denying defendant's motion to compel arbitration, holding plaintiff's TCPA claims "relate to matters beyond the scope of the parties' arbitration agreement").

Defendant advances a position that courts have described as indefensible—that an arbitration agreement was so expansive that it had no limiting principle. *See In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d at 1262-63. In *In Re Jiffy Lube International*, the district court concluded that an arbitration clause covering "any and all disputes" "would clearly be unconscionable." *Id.* at 1263. The court cited *Smith v. Steinkamp*, in which Judge Posner noted the "absurd results" that would follow from an arbitration clause not tethered to an underlying agreement:

> [I]f Instant Cash murdered Smith in order to discourage defaults and her survivors brought a wrongful death suit against Instant Cash . . . Instant Cash could insist that the wrongful death claim be submitted to arbitration. For that matter, if an employee of Instant Cash picked Smith's pocket when she came in to pay back the loan, and Smith sued the employee for conversion, he would be entitled to arbitration

> of her claim. It would make no difference that the conversion had occurred in Smith's home 20 years after her last transaction with Instant Cash.

318 F.3d 775, 777 (7th Cir. 2003). He opined that such results "might be thought unconscionable," *id*. at 778, but did not have to address that issue because the agreement was susceptible of a construction limiting "the duty to arbitrate to disputes arising under 'this Agreement.'" *Id*. at 777.

Similarly, here, this Court need not reach the issue of whether the arbitration clause is unconscionable because the Court should find that the scope of the provision is not broad enough to include this action, and the interpretation Defendant advocates would render the arbitration clause unconscionable. There is no logical principle that would limit the scope of the arbitration clause under Defendant's interpretation, and Defendant's reading is as broad as the absurd result hypothesized by Judge Posner.

For example, forcing arbitration on the present TCPA matter would be equivalent to compelling arbitration if Plaintiff was rear-ended by an employee of Defendant. *See, e.g.*, *Savage v. Citibank N.A.*, No. 14-cv-03633-BLF, 2015 U.S. Dist. LEXIS 62343, at *10 (N.D. Cal. May 12, 2015) ("It thus stretches the bounds of reason to interpret the 'our relationship' language so broadly to encompass all other interactions with Citi, whether anticipated or not. […] Defendants' arguments in this case are analogous to those advanced—and rejected—in *In re Jiffy Lube Int'l, Inc*."); *Esparza v. SmartPay Leasing, Inc.*, No. C 17-03421 WHA, 2017 U.S. Dist. LEXIS 164014, at *7 (N.D. Cal. Oct. 3, 2017) ("[R]eading the clause as applying to any and every claim arising between SmartPay and its customers, even including employment and tort claims, with no limiting principle would render the clause impermissibly overbroad, and therefore inoperable.") (citing *Savage* and *In re Jiffy Lube Int'l, Inc.*).

No reasonable person would think that signing an agreement with an arbitration clause would obligate them to arbitrate literally every possible dispute he or she might have with the other party indefinitely and without any limitation. *See Revitch v. DirecTV, LLC*, No. 18-cv-01127-JCS, 2018 U.S. Dist. LEXIS 143812, at *46-47 (N.D. Cal. Aug. 23, 2018) ("the undersigned agrees with the Court in *Wexler* that the broad interpretation of the arbitration provision advanced by DirecTV leads to absurd results. Under DirecTV's interpretation of the arbitration provision, merely by agreeing to a contract to receive wireless service a customer would agree to subject to arbitration not only disputes that might arise with the service provider relating to that service but virtually any sort of dispute the customer might have against any entity that might in the future be acquired by the holding company that owns the service provider. No reasonable consumer would enter into such a contract.").

Respectfully, this Court should reject such a broad interpretation and deny Defendant's Motion.

### C. Plaintiff Does not Oppose a Brief Stay of the Proceedings.

Plaintiff disputes that Defendant's Motion will be dispositive. Nevertheless, there are a number of deadlines approaching in the case including expert disclosures (February 11, 2022) and the close of discovery (April 1, 2022). Counsel for Plaintiff has attempted to coordinate Defendant's deposition, but while indicating that dates would be provided, no dates have been given by Defendant's counsel and, instead, Defendant filed its Motion. Due to Defendant's sudden refusal to participate in discovery, Plaintiff consents to a brief stay pending resolution of Defendant's Motion to avoid the timing issues created by the Motion and refusal to continue the litigation. In the event the Court denies the Motion, Plaintiff anticipates submitting a proposal for an amended scheduling order to account for Defendant's discovery delays.

## IV. CONCLUSION

Defendant is not a party or third-party beneficiary to the contracts it is attempting to enforce. This alone is fatal to Defendant's Motion. But even if it could somehow enforce arbitration provisions in agreements to which it is not a party, Defendant's Motion should nevertheless fail because Plaintiff's TCPA claims have nothing to do with the agreements from eleven years ago that are no longer in effect.

**WHEREFORE**, Plaintiff Kamisha Stanton, respectfully requests entry of an Order denying Defendant's Motion, and for such other relief deemed appropriate under the circumstances.

Dated: February 4, 2022

Respectfully Submitted,

*/s/ Manuel S. Hiraldo*
**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
(*pro hac vice*)
Florida Bar No. 030380
401 E. Las Olas Boulevard Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713